## Case No. 16,040.

### UNITED STATES v. PHELPS et al.

[20 Blatchf. 129.] [1]

Circuit Court, S. D. New York. Nov. 18, 1879.[2]

CUSTOMS DUTIES—CONCLUSIVENESS OF APPRAISE-
MENT—ALLOWANCE FOR DAMAGE.

Under sections 2927 and 2928 of the Revised Statutes, there can be an appraisement for an abatement of duties, on account of damage to goods sustained during the voyage of importation, after the goods have been entered at the custom house and the estimated amount of duties thereon have been paid.

[In error to the district court of the United States for the Southern district of New York.

[This was an action brought in the district court against Frank Phelps and Howard Phelps, to recover certain duties alleged to have been illegally refunded to the defendant by the collector of the port of New York. The judgment was for the defendants. Case unreported.]

C. P. L. Butler, Jr., Asst. U. S. Dist. Atty.
Charles M. Da Costa, for defendants in error.

BLATCHFORD, Circuit Justice. This is a writ of error to the district court. The following facts appear by the bill of exceptions. The defendants in error (who were the defendants below and will be called the defendants), on the 7th of August, 1876, imported into the port of New York from a foreign port, 3,825 boxes of lemons.

1 [Reported by Hon. Samuel Blatchford, Circuit Justice, and here reprinted by permission.]
2 [Affirmed in 107 U. S. 320, 2 Sup. Ct. 389.]

The value of said lemons in the foreign market, when and where they were purchased, was 74.521.09 francs, equal to $14,383. The duties thereupon, at the rate of 20 per centum ad valorem, amounted to $2,876.60, on which sum the plaintiff gave a credit of $2,013.60, the amount admitted by the complaint to have been paid, claiming to recover the balance, $863, as duties. The defendants, in like manner, imported, on the 15th of August. 1876, 2,930 boxes of lemons, of the foreign value, when shipped, of 49,861.89 francs, equal to $9,623. The duties thereon, at the rate of 20 per centum, ad valorem, were $1,924.60, on which sum the plaintiffs gave a credit of $1,636, the amount admitted by the complaint to have been paid, claiming to recover the balance, $288.60, as duties. After the plaintiffs had proved the foregoing facts, the defendants offered to prove that they made entry at the custom house in New York of the first above mentioned importation of lemons at the full invoice price on the 7th of August, 1876, and then paid to the plaintiffs $2,876.60, as the estimated amount of duty on said importation, if in sound condition, and afterwards, and on the 14th of August, 1876, applied for an allowance for damage to the same on the voyage of importation; that, thereafter, an examination and appraisement of the damage were made, and thereupon an allowance was made for said damage; that the amount of said damage allowance was $4,-315; that the duties thereon, at 20 per cent., amounted to $863; that, in accordance therewith, the said entry was liquidated on the 3d of October, 1876; and that, on the 14th of October, 1876, the plaintiffs refunded and paid to the defendants the sum of $863. To this evidence the counsel for the plaintiffs objected, on the ground that the damage allowance should have been applied for, and the damage ascertained, before the entry of the goods; that, as the application was not made, nor the amount of damage ascertained, until after the entry, the proceedings therefor were irregular, and without warrant of law; and that the defendants could acquire no benefit or advantage from any allowance made in pursuance thereof. The court overruled the objection and admitted the evidence, and to such ruling and admission, the plaintiffs' counsel excepted.

As to the importation of August 15, 1876, the defendants offered to prove that an entry was made of the goods at their full invoice price on that day. and the sum of $1,924.60 was paid to the plaintiffs as the estimated amount of duty on said importation. if in sound condition; that an application for damage allowance was made August 22, 1876; that an examination and appraisement were thereupon made, and an allowance for damage was thereupon made, to the amount of $1,443, on which the duties amounted to $288.60; that the entry was liquidated on the 29th of September, 1876; and that,

on the 11th of October, 1876, the plaintiffs refunded and paid to the defendants the said sum of $288.60. To this evidence the counsel for the plaintiffs objected on the same ground as before. The court overruled the objection and admitted the evidence, and to such ruling and admission the plaintiffs' counsel excepted.

The defendants then rested. The counsel for the plaintiffs thereupon requested the court to charge the jury, that, as the goods had been entered at the full invoice prices in the first instance, and the application for allowance, the examination and the appraisement were not made, nor the damage ascertained, nor the damage allowance made, until after the entries of the goods, the damage allowance was unwarranted by law, and the jury could not give the defendants any abatement of duties on account of such damage allowance. The court refused so to charge, and the counsel for the plaintiffs excepted to such refusal. The jury rendered a verdict for the defendants.

It is presented, as a question for decision, whether there can be an appraisement for an abatement of duties, on account of damage to goods sustained during the voyage of importation. after the goods have been entered at the custom house and the estimated amount of duties thereon has been paid.

Section 2927 of the Revised Statutes provides as follows: "In respect to articles that have been damaged during the voyage, whether subject to a duty ad valorem, or chargeable with a specific duty, either by number, weight or measure, the appraisers shall ascertain and certify to what rate or percentage the merchandise is damaged, and the rate of percentage of damage so ascertained and certified shall be deducted from the original amount subject to a duty ad valorem, or from the actual or original number, weight or measure on which specific duties would have been computed. No allowance, however, for the damage on any merchandise that has been entered, and on which the duties have been paid, or secured to be paid, and for which a permit has been granted to the owner or consignee thereof, and which may, on examining the same, prove to be damaged, shall be made, unless proof to ascertain said damage shall be lodged in the custom house of the port where such merchandise has been landed, within ten days after the landing of such merchandise." This is a re-enactment of like provisions in section 52 of the act of March 2, 1799 (1 Stat. 666).

Section 2928 of the Revised Statutes provides as follows: "Before any merchandise which shall be taken from any wreck shall be admitted to an entry, the same shall be appraised; and the same proceedings shall be ordered and executed in all cases where a reduction of duties shall be claimed on account of damage which any merchandise shall have sustained in the course of the voyage; and in all cases where the owner, importer, consignee or agent shall be dissatisfied with such appraisement, he shall be entitled to the privileges of appeal, as provided for in this title." This section is taken

from section 21 of the act of March 1, 1823 (3 Stat. 736), which section 21 was in these words: "Before any goods, wares, or merchandise which may be taken from any wreck shall be admitted to an entry, the same shall be appraised in the manner prescribed in the sixteenth section of this act, and the same proceedings shall be ordered and executed in all cases where a reduction of duties shall be claimed on account of damage which any goods, wares, or merchandise shall have sustained in the course of the voyage; and in all cases where the owner, importer, consignee or agent shall be dissatisfied with such appraisement, he shall be entitled to the privileges provided in the eighteenth section of this act." The words "in the manner prescribed in the sixteenth section of this act," found in said section 21 are not reproduced in section 2928 of the Revised Statutes. The manner prescribed in the sixteenth section of the act of March 1, 1823 (3 Stat. 735), is by appraisers to be appointed in a manner designated in that section. By the fifty-second section of the act of 1799, it was provided that, in the case of goods which had received damage during the voyage, the appraisement to ascertain such damage should be made by two merchant appraisers, one to be appointed by the collector, and the other by the importer. By the fifteenth section of the act of April 20, 1818 (3 Stat. 437), it was provided as follows: "Before any goods, wares or merchandise which may be taken from any wreck shall be admitted to entry, the same shall be appraised in the manner prescribed by the ninth section of this act; and the same proceedings shall also be had where a reduction of duties shall be claimed on account of damage which any goods, wares or merchandise imported into the United States shall have sustained in the course of the voyage." The ninth section of that act provided for the appointment by the president and senate, in each one of six designated ports, of two appraisers, who, with a merchant appraiser, to be chosen by the importer, were to make appraisements in such six ports, and in other ports appraisements were to be made by two merchant appraisers to be selected by the collector, and one merchant appraiser to be chosen by the importer. This act of 1818 was to continue in force for two years. By the act of April 18, 1820, it was continued in force till March 4, 1823 (3 Stat. 563). Then came the act of March 1, 1823, before referred to. The sixteenth section of that act provides for the appointment, by the president and senate, in each one of seven designated ports, of two appraisers, who were to make appraisements in such seven ports, and in other ports appraisements were to be made by two merchant appraisers to be appointed by the collector.

A change was made by the act of 1818, and continued by the acts of 1820 and 1823, in the mode of appointing appraisers who were to appraise in the case of damaged goods. By the act of 1799, there were to be two appraisers, one appointed by the collector and the other by the importer. By the act of 1818 there were to be in certain ports two standing appraisers appointed by the United States, and one appraiser selected in each case by the importer, and in other ports two appraisers selected in each case by the collector, and one appraiser selected in each case by the importer. This was continued by the act of 1820. By the act of 1823 there were to be in certain ports two standing appraisers appointed by the United States, and in other ports two appraisers appointed in each case by the collector. The change made by the act of 1818 from the act of 1799, in the mode of selecting the appraisers, was a marked and a material one, as it gave to the United States the selection of two appraisers, and to the importer the selection of one, instead of giving to the United States the selection of one, and to the importer the selection of one. Hence, when the fifteenth section of the act of 1818 said that "the same proceedings shall also be had," on a claim to a reduction of duties on account of damage, the reference would seem to have been to an appraisement "in the manner prescribed" by the ninth section of that act, without any prescription that it should be either before or after the entry of the goods. The appraisement is a proceeding. By the fifty-second section of the act of 1799, appraisement to ascertain damage was to be made by appraisers appointed in a manner prescribed by that section. By the fifteenth and ninth sections of the act of 1818, such appraisement was to be made by appraisers appointed in a different manner. The requirement of the fifteenth section of the act of 1818 that goods taken from a wreck shall not be entered until they have been appraised, is clear and explicit. Prior to that act goods taken from a wreck could have been entered as other imported goods, before appraisement, and were within the provisions of law as to goods damaged during the voyage. Reasons can very well be suggested why a change was made in regard to wrecked goods, coming into the country in an irregular way, and not by the discharge of them at a landing wharf, directly out of the vessel which brought them, such change requiring them to be appraised before entry. But no satisfactory reasons can be assigned for a like change in regard to damaged goods landed in the regular way, and it ought to appear very clearly from the language of the statute, that a change was intended in regard to such goods. The system prescribed by the act of 1799, and continued in force, in regard to the landing of goods regularly imported, was that they should first be entered and the duties on them be paid or secured, and then a permit be obtained for their landing, and severe penalties were imposed for landing goods without a permit. Act March 2, 1799, §§ 49, 50 (1 Stat. 664, 665). It is impossible for an importer to ascertain, until he sees his goods, after they have been landed in pursuance of

a permit following an entry, whether they have been damaged or not. Hence, the fifty-second section of the act of 1799 clearly provides for the entry, the payment of duties, the permit, and the landing, in the above order, and then for the allowance for damage. It ought to require explicit language to make a change in this order of proceeding. It was very proper to require that proof of damage should be lodged within ten days after the landing. But, to require appraisement before entry or landing, in the case of goods regularly imported, would be to prescribe a system impossible of practical execution. These views apply to the provisions of the twenty-first section of the act of 1823. The natural meaning of the words of that section, which provide that "the same proceedings shall be ordered and executed in all cases where a reduction of duties shall be claimed on account of damage which any goods, wares or merchandise shall have sustained in the course of the voyage," is the same as the natural meaning of the words in the fifteenth section of the act of 1818, which provide that "the same proceedings shall also be had where a reduction of duties shall be claimed on account of damage which any goods, wares or merchandise imported into the United States shall have sustained in the course of the voyage," and that is, that the appraisement proceedings shall be conducted in the manner before prescribed in the acts respectively, and not that goods regularly imported and bonded, and not "taken from any wreck," shall be appraised before entry.

In the case of Shelton v. Austin [Case No. 12,752], affirmed by the supreme court, as Shelton v. The Collector, 5 Wall. [72 U. S.] 113, the fifty-second section of the act of 1799 had not been complied with, in that proof to ascertain the damage had not been lodged within the ten days prescribed by that section. The goods were not taken from a wreck, but they were entered before they were appraised. Mr. Justice Clifford, in the circuit court, held that they must pay duties on their sound value, as entered, because, under the twenty-first section of the act of 1823, they were required to be appraised before entry, in order to warrant an allowance for damage on the voyage. In the supreme court no counsel appeared for the plaintiff in error. The court held that there could be no allowance for damage under the act of 1799, because proof had not been lodged within the ten days after landing; and that there could be none under the act of 1823, because there had been an entry before appraisal. The first ground was an adequate one for the affirmance of the judgment, and the United States alone were represented on the argument. In the present case the record shows that the requirement as to the ten days was complied with.

By section 5595 of the Revised Statutes, those statutes are declared to embrace the statutes of the United States, general and permanent in their nature, in force on the 1st of December, 1873. It follows that the provisions of the Revised Statutes are to be construed as the enactments in force on the 1st of December, 1873, would have been construed. Sections 2927 and 2928 of the Revised Statutes are both of them enacted as having been in force on the 1st of December, 1873. The regulations of the treasury department in regard to claims for damage allowance, in force and acted on since the Revised Statutes were enacted, clearly recognize the practice and the propriety of entering goods, and then claiming a damage allowance on them, and proceeding to an appraisement. Such was the practice in the present case, acted on by the collector, even to the paying back of the deposited duties on the amount of the damage.

It is contended for the United States, that, under the twenty-first section of the act of 1823, goods damaged in the course of the voyage, though not taken from a wreck, must be appraised before entry, in order to warrant an allowance for damage; and that as, in this case, the entry was made before appraisal, no allowance for damage was lawful. The district court took a different view. The practice of the treasury department and of the collector has evidently been contrary to what is now contended for by the United States, notwithstanding the decision of the supreme court in Shelton v. The Collector [supra]. This practice, it is fair to assume, has obtained because the treasury department did not regard that decision as disposing of the question finally. It is important that the question should be speedily decided by the supreme court, both in the interest of the government and of importers; and, in view of all the facts of the case, I think the most proper disposition of it is, to affirm the judgment of the court below, and thus enable the United States to obtain speedily a reconsideration of the question by the supreme court, instead of sending the case back for a new trial in the district court, with a long delay before it can reach the supreme court. The judgment is affirmed.

[Subsequently a writ of error was sued out from the supreme court, where the judgment of this court was affirmed. 107 U. S. 320, 2 Sup. Ct. 389.]